IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| CLINTON MARLOWE, | CASE NO. 1:22-cv-1020 |
| Plaintiff, | DISTRICT JUDGE SARA LIOI |
| vs. | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Clinton Marlowe filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying Disability Insurance Benefits and Supplemental Security Income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). This matter has been referred to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In November and December 2018, Marlowe filed applications for Disability Insurance Benefits and Supplemental Security Income, respectively,

alleging a disability onset date of May 10, 2018,[1] and claiming he was disabled due to severe depression, anxiety, chronic obstructive pulmonary disease, psoriasis, and sleep apnea. Tr. 18, 393, 398, 436. The Social Security Administration denied Marlowe's applications and his motion for reconsideration. Tr. 128–29, 166–67. Marlowe then requested a hearing before an Administrative Law Judge (ALJ). Tr. 267.

In February 2020, an ALJ held a hearing. Marlowe and a vocational expert testified. Tr. 48–66. The next month, the ALJ issued a written decision finding that Marlowe was not disabled. Tr. 204–20. Marlowe appealed, and the Appeals Council remanded the case back to the ALJ in part to re-evaluate the opinion evidence. Tr. 226–30.

In May 2021, the ALJ held another hearing. Marlowe and a vocational expert testified. Tr. 73–90. The next month, the ALJ issued a written decision finding that Marlowe was not disabled. Tr. 15–30. That decision became final on May 19, 2022, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Marlowe filed this action on June 14, 2022. Doc. 1. He asserts the following assignment of error:

---

[1] "Once a finding of disability is made, the ALJ must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

Was the ALJ's RFC finding supported by the evidence and the rejection of all the Plaintiff's treating physicians' opinions legally sufficient?

Doc. 9, at 1.

**Evidence**

*1. Personal and vocational evidence*

Marlowe was born in 1967 and was 50 years old on his alleged disability onset date. Tr. 29. He used to work as a molding machine operator and hose tube operator. Tr. 80.

*2. Relevant medical evidence[2]*

In November 2018, Marlowe saw his primary care physician Norman Perala, M.D.[3] Tr. 723. Marlowe had a history of chronic obstructive pulmonary

---

[2]      The recitation of medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs. Marlowe's arguments are related to his breathing impairment, so I only include evidence related to that issue. In his reply brief, in response to the Commissioner's same assertion, Marlowe claims that "several of … Marlowe's other impairments support Dr. Srivastava's opinion, including [Marlowe's musculoskeletal conditions]." Doc. 11, at 1–2. But Marlowe's arguments—the ALJ erred when he evaluated the opinion of Dr. Srivastava, Marlowe's pulmonologist—only rely on Marlowe's breathing issues. Marlowe doesn't mention his musculoskeletal conditions in the argument section of his opening brief. Dr. Srivastava is a pulmonologist and didn't rely on musculoskeletal conditions in his opinion. Tr. 959–60. And Marlowe's vague assertion in his reply brief about his musculoskeletal conditions is not developed. So Marlowe has waived any purported argument about those conditions. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

[3]      In his brief, Marlowe cites evidence from 2015 through 2017. Doc. 9, at 3–4. But a prior ALJ rejected Marlowe's disability claim covering July 2014 to May 9, 2018, and discussed the evidence that Marlowe cites. Tr. 94–95, 99.

disease (COPD), hypertension, anxiety, depression, psoriasis, and severe heart valve disease, status post repair. Tr. 723. Dr. Perala's pulmonary exam findings showed that Marlowe had clear lungs to auscultation, no wheezes or rales,[4] and "mildly symmetrically diminished [bilateral] air exchange." Tr. 724. Dr. Perala advised Marlowe to stop smoking and prescribed a trial of nicotine patches. Tr. 725. Dr. Perala ordered an echocardiogram, which showed no significant changes from Marlowe's 2017 echocardiogram.[5] Tr. 725, 735–37.

In early January 2019, Marlowe saw his pulmonologist Sanjay Srivastava, M.D. Tr. 899. At the time of that visit, Marlowe hadn't seen Dr. Srivastava "in over a year." Tr. 899. Marlowe stated that he continued to feel short of breath. Tr. 899. He stated that he used his Spiriva Respimat medication but that he ran out of his Symbicort medication and his rescue inhaler. Tr. 899. Marlowe reported that he smoked 10 cigarettes a day. Tr. 899. Dr. Srivastava's exam findings showed that Marlowe's lungs were clear to

---

Marlowe appealed that decision, Tr. 11, and another unit of this Court affirmed the ALJ's decision. *See* Case No. 1:18-cv-2455, *Marlowe v. Comm'r of Soc. Sec.*, *Order* (filed Dec. 19, 2019). Marlowe's current application lists May 10, 2018, as Marlowe's disability onset date. Tr. 15–16. So I begin with the evidence from 2018.

[4]     A rale is a "discontinuous sound consisting of a series of short nonmusical noises, heard primarily during inhalation." *See* Dorland's Illustrated Medical Dictionary, 32nd Edition, 2012, at 1567.

[5]     "An echocardiogram is an ultrasound test that checks the structure and function          of          your          heart."          *See* https://my.clevelandclinic.org/health/diagnostics/16947-echocardiogram    (last visited Feb. 21, 2023).

auscultation with no wheezes, rhonchi, or rales.[6] Tr. 902. Dr. Srivastava diagnosed Marlowe with emphysema and severe COPD. Tr. 902. Dr. Srivastava wrote that a prior pulmonary function test showed that Marlowe had "moderate to severe obstruction." Tr. 902. He reordered Marlowe's medications and recommended that Marlowe undergo a new pulmonary function test to "get him into pulmonary rehab" and that he should stop smoking. Tr. 902.

Marlowe underwent a pulmonary function test and 2 weeks later followed up with Dr. Srivastava. Tr. 887, 898. The pulmonary function test showed moderately severe airway obstruction disease, a probable restriction, severe diffusion defect, and moderate neuromuscular disease. Tr. 898. The report stated that a clinical trial of bronchodilators may be beneficial. Tr. 898. Marlowe reported that he smoked 10 to 15 cigarettes a day. Tr. 888. Dr. Srivastava's pulmonary exam showed that Marlowe's lungs were clear to auscultation and that Marlowe had no wheezes, rhonchi, or rales. Tr. 889.

In mid-March 2019, Dr. Srivastava completed a Pulmonary Medical Source Statement on Marlowe's behalf. Tr. 959–60. Dr. Srivastava listed Marlowe's diagnosis as COPD and Marlowe's symptoms as shortness of breath and fatigue. Tr. 959. Dr. Srivastava wrote that Marlowe's ability to lift and carry was affected by his impairment but "[could] not say at this time" how

---

[6]     A rhonchi is "a continuous sound … consisting of a dry, low-pitched, snore-like noise, produced in the throat or bronchial tube due to a partial obstruction such as by secretions." *See* Dorland's, *supra*, at 1642.

many pounds Marlowe could lift and carry. Tr. 959. Marlowe could stand or walk "probably" two hours total in an eight-hour workday and one to two hours without interruption. Tr. 959. Marlowe's ability to sit was not affected. Tr. 959. Dr. Srivastava stated that based on Marlowe's pulmonary function test and a chest CT scan, Marlowe could never climb or crawl but could occasionally balance, stoop, crouch, and kneel. Tr. 960. Marlowe's ability to reach, handle, push, pull, feel, and speak were not affected. Tr. 960. Dr. Srivastava wrote that those functions were nevertheless affected by heavy exertion, "inclines," and extreme weather. Tr. 960. Dr. Srivastava stated that Marlowe should avoid all exposure to high humidity and wetness; moderate exposure to extreme cold and extreme heat; and concentrated exposure to perfumes, soldering fluxes, solvents, cleaners, fumes, odors, gases, dust, and chemicals. Tr. 960. He wrote that Marlowe's symptoms would interfere with Marlowe's attention and concentration 15 percent of the day and cause Marlowe to be absent from work more than 4 days a month. Tr. 960.

Ten days later, Marlowe had a mental health appointment for a medication follow-up. Tr. 1005–06. The provider wrote that Marlowe "continues to have the same struggles with his anxiety, mostly when taking his mom to the store" and that Marlowe's medication helped in "those situations." Tr. 1005. The provider observed that Marlowe "gets short of breath when he talks for long periods of time." Tr. 1005. Marlowe reported

improvement in his mental health symptoms and his medications were continued. Tr. 1006.

In late March 2019, Marlowe had a consultative exam consisting of pulmonary function testing. Tr. 965. The doctor's interpretation of the study was "moderate obstructive ventilatory defect" with "improvement following bronchodilators." Tr. 965.

In April 2019, Marlowe had a mental health counseling appointment and the counselor commented that Marlowe "came in upset about his stress test." Tr. 1012. Marlowe was "frustrate[d]" because he felt that the Social Security Administration didn't trust his doctors to make an accurate recommendation. Tr. 1012. The counselor wrote that Marlowe "was having a hard time breathing throughout the beginning of the session and was worked up." Tr. 1012. She wrote that Marlowe "appears to have a hard time breathing after he talks for a while and needs to take a break." Tr. 1012. Marlowe also reported that his memory "ha[d] not been good" and that he was becoming increasingly anxious about that. Tr. 999.

In late July or early August 2019, Marlowe saw Dr. Perala for a medication follow-up.[7] Tr. 1064. Marlowe stated that he felt dyspneic (short of breath), a chronic problem which he attributed to anxiety and COPD. Tr. 1064. Marlowe reported intense anxiety due to situational stressors and felt that his

---

[7] The treatment note lists the "encounter date" as August 2, 2019, but the "progress notes" were written on July 29, 2019. Tr. 1064.

anxiety was poorly controlled. Tr.1064. Dr. Perala observed that Marlowe was wheezing. Tr. 1064. He wrote that Marlowe's symptoms "significantly improved (resolved) in office after discussing ways to cope with stressors." Tr. 1064. Dr. Perala's pulmonary exam findings showed that Marlowe had mildly symmetrically diminished air exchange and no wheezes or rales. Tr. 1067. Dr. Perala's assessment was that Marlowe's dyspnea was "partly related to COPD" and that Marlowe's anxiety was the "main cause … and is likely also flaring COPD." Tr. 1067. Dr. Perala wrote, "Marlowe's dyspnea completely resolved in office after we discussed ways to manage anxiety and his intense anxiety lessened." Tr. 1067.

In late August 2019, Marlowe's anxiety medication was increased. Tr. 1125. In November 2019, Marlowe had a counseling appointment. Tr. 1126. Marlowe reported that he was out of his medications, that he did well on them, and that he would like to continue his then-current medication regimen. Tr. 1125–26. The counselor commented that Marlowe was visibly out of breath during his interview and refilled Marlowe's medications. Tr. 1126.

In early January 2020, Marlowe saw a physician's assistant and complained of memory loss for 3 years before the appointment and back and knee pain. Tr. 1184, 1187, 1202. As for his memory loss, Marlowe said that he was worried that he had early dementia. Tr. 1184. The problem was not "an acute or abrupt change" and he stated that taking his anxiety medication made the problem worse. Tr. 1184. Marlowe reported having a cough but no

shortness of breath. Tr. 1184. Upon exam, Marlowe had normal pulmonary effort, diminished breath sounds, and no wheezes or rales. Tr. 1184. The provider encouraged Marlowe to stop smoking and wrote that if Marlowe's lab tests came back normal, the provider would refer Marlowe to neurology for memory loss. Tr. 1187.

Later that month, Marlowe told his counselor that he had a neurology appointment "because he is not able to remember anything." Tr. 1290. Marlowe reported feeling anxious about his upcoming disability hearing. Tr. 1289. At an appointment for low back pain, Marlowe denied shortness of breath. Tr. 1225.

In February 2020, Marlowe saw a neurologist for his complaints of memory loss. Tr. 1494. Marlowe reported that his memory complaints had been ongoing for 2 years before the appointment. Tr. 1494. He lost his train of thought and, when distracted, couldn't remember what he was thinking. Tr. 1494. On a review of symptoms list, Marlowe denied shortness of breath, coughing, and wheezing and reported "other lung problems." Tr. 1497. Upon pulmonary exam, Marlowe had normal breath sounds and his pulmonary effort was normal. Tr. 1497. He was not in respiratory distress and had no wheezes or rales. Tr. 1497. The doctor ordered a brain MRI and other neurological tests. Tr. 1500.

In June 2020, Marlowe had telephone appointment with Dr. Srivastava to follow-up for COPD. Tr. 1508. The treatment note states that Marlowe had

chronic COPD and quit smoking a year before the appointment. Tr. 1508. Dr. Srivastava continued Marlowe's medications and recommended a desaturation study to determine whether Marlowe could qualify for a portable oxygen concentrator. Tr. 1508. Also in June, Marlowe had a telephonic counseling appointment and reported that he continued to smoke. Tr. 1362. He said that he would follow the counselor's suggestion that he "only roll 20 cigarettes for the day and when they are gone they're gone." Tr. 1362.

In September 2020, Marlowe went to the emergency room for a possible allergic reaction to insect stings. Tr. 1229. Marlowe stated that he was mowing his lawn; yellow jackets stung him on his leg 4 or 5 times; he finished mowing his lawn; and "an hour or so later" he felt that his lips were swollen. Tr. 1229. He denied shortness of breath, a cough, or chest pain. Tr. 1231. Upon exam, Marlowe's oxygen saturation rate was 98 to 100 percent. Tr. 1232. Marlowe had no cough or bronchospasm and his breath sounds were clear and equal with no wheezes, rubs, or rhonchi. Tr. 1232. He did not use "accessory muscles with respiratory effort" and there was "no indication of any hoarseness with conversation" Tr. 1232. Marlowe was prescribed steroids and an epi-pen and discharged home. Tr. 1233.

10

3.      *State agency opinions*[8]

In April 2019, Rannie Amiri, M.D., reviewed Marlowe's record and assessed his physical residual functional capacity (RFC).[9] Dr. Amiri found that Marlowe could stand, walk, and sit for about 6 hours in an 8-hour workday and lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 141. Marlowe also had postural and environmental limitations. Tr. 141–42.

In July 2019, Bradley J. Lewis, M.D., reviewed Marlowe's record. Tr. 196–98. Dr. Lewis agreed that Marlowe could perform light work and added that, due to his knee impairment, Marlowe was further limited to occasional pushing and pulling with his right leg. Tr. 196. Dr. Lewis also assessed a more limited postural limitation (occasional, not frequent, kneeling) and added further environmental limitations. Tr. 196–98.

---

[8]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[9]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

11

*4.     Hearing testimony*

Marlowe, who was represented by counsel, testified at both administrative hearings.[10]

*February 2020 hearing.* When asked why he was unable to work full time, Marlowe answered that his lungs "are horrible" and he "struggle[d] with breathing." Tr. 53. When asked if he stilled smoked, Marlowe answered no. Tr. 53. Marlowe also said that he has anxiety, depression, and back problems. Tr. 53.

Marlowe said that he becomes short of breath with activity and "sometimes even talking." Tr. 53. He took his medication, Symbicort, once a day and used his rescue inhaler "when needed." Tr. 54.

As for his anxiety, Marlowe stated that it was caused by "public situations." Tr. 54–55. He explained that taking his mother, who is a "senior citizen," to the store causes anxiety—his mother "brings a lot of anxiety" and when the store is crowed "I just don't get out of there." Tr. 55. When asked if he had panic attacks, Marlowe stated, "I don't know if I'm having one today, but a lot of anxiety today" because of the serious nature of the hearing. Tr. 55, 58. Marlowe has anxiety medication, which he "do[es]n't take … unless [he] need[s] it." Tr. 58. The medication causes side effects—it makes him feel "kind of drowsy" and he has "slurry words" and "forgetfulness." Tr. 58.

---

[10]     The ALJ held a hearing in February 2020. After the Appeals Council remanded the ALJ's unfavorable March 2020 decision, the ALJ held a second hearing in May 2021.

Marlowe estimated that he could lift 10 pounds. Tr. 59. Walking causes him to become short of breath. Tr. 59. Marlowe said that the amount of time he could stand and sit depended upon how much pain he experienced. Tr. 59. Medication helped him sleep but when he didn't take the medication he slept "very little." Tr. 59.

When asked if he "was sure" he stopped smoking, Marlowe answered, "yeah." Tr. 60. When asked how long ago he stopped smoking, Marlowe couldn't answer and then admitted that he still smoked, albeit "not a whole lot." Tr. 60–61. When asked whether he wished to dispute a January 2020 treatment note stating that Marlowe reported smoking a pack of cigarettes a day, Marlowe indicated that he did not wish to dispute that fact. Tr. 61.

*May 2021 telephonic hearing.* When asked to describe the problems he experienced the few years before the hearing and why they would limit his ability to perform work, Marlowe stated that after he had heart surgery, his "lung is bad." Tr. 76. He has "a lot of emphysema" and "run[s] short of breath." Tr. 76. He also has back and knee problems. Tr. 76–77. He can't stand very long and spends "a lot of time in bed with a heating pad and a bottle of Advil." Tr. 77. Marlowe estimated that he could stand for no more than 20 minutes and can sit "for a while, but [his] back really hurts." Tr. 77. Marlowe stated that he "do[es]n't lift anymore" and estimated that the heaviest he could comfortably lift at one time was 5 pounds. Tr. 77. Marlowe's mother and son

help with household chores and Marlowe does his own laundry. Tr. 78. Marlowe said that he stopped smoking in January 2020. Tr. 79.

Marlowe also stated that he has anxiety and depression. Tr. 78. Different situations cause his anxiety and he takes medication for it. Tr. 78.

The ALJ stated that he was adopting a prior vocational expert's finding that Marlowe's past relevant work was as a molder machine operator and a hose tube operator. Tr. 80. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Marlowe could perform Marlowe's past work or any other work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 80–81. The vocational expert answered that such an individual could perform Marlowe's past work as a molder machine operator and could also perform the following additional jobs: cafeteria attendant, housekeeper cleaner, and electrical accessories assembler. Tr. 81–82.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since May 10, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant had the following severe impairments: chronic obstructive pulmonary disease with emphysema, sleep apnea and history of tobacco abuse; degenerative changes of lumbar spine without radiculopathy; rotator cuff syndrome of right shoulder; history of ACL tear of right knee without osseous abnormality; dermatitis/psoriasis;

status post mitral valve replacement; major depressive disorder; anxiety disorder with social phobia; and history of drug and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except for no climbing of ladders, ropes or scaffolds, or crawling; frequent balancing; occasional climbing of ramps and stairs, stooping, kneeling and crouching; occasional overhead reaching with right upper extremity without limitation of lateral reaching, and no limitation of left upper extremity; no concentrated exposure to temperature extremes, humidity, environmental pollutants, or skin irritants; no exposure to hazards (heights, machinery, commercial driving); and mental limitation that he perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions with coworkers, supervisors and public (no arbitration, negotiation or confrontation) (20 CFR 404.1569a and 416.969a).

6. The claimant is capable of performing past relevant work as a molding machine tender. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and residual functional capacity (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process…

8. The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 18–30.

15

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.   Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.   Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.   Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.   What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.   Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the vocational factors to perform available work in the national economy. *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Id.*

### Standard of review

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

A court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or a preponderance of the evidence

supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### Discussion

Marlowe argues that the evidence does not support the ALJ's evaluation of Dr. Srivastava's opinion. Doc. 9, at 1.

### 1.    *This Court reviews the ALJ's 2021 decision*

Throughout his briefs, Marlowe discusses the ALJ's 2020 decision and invites the Court to compare the sufficiency of the ALJ's 2021 decision based on a comparison to the ALJ's 2020 decision. *See* Doc. 9, at 20, 22–25; Doc. 11, at 7–9. But this Court does not review the ALJ's 2020 decision. The Appeals Council remanded the ALJ's 2020 decision because, in part, it found that the ALJ did not evaluate all of Dr. Srivastava's opinion. Tr. 228–29. The Appeals Council ordered the ALJ to provide Marlowe an opportunity for a new administrative hearing and to issue a new decision. Tr. 230. The ALJ held another administrative hearing and in June 2021 wrote a new decision. The Appeals Council declined to review that decision. So the ALJ's June 2021

decision is the Agency's final decision, and the decision this Court reviews.[11]
*See* 20 C.F.R. § 404.981.

　　2.　　*The ALJ's did not err when he evaluated Dr. Srivastava's opinion*

　　In his reply brief, Marlowe argues, for the first time, that the ALJ failed to comply with the Appeals Council's remand order. Doc. 11, at 3, 8. Because Marlowe presented this argument for the first time in his reply brief, he has waived it. *See United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("An argument first presented to the Court in a reply brief is waived."). Even if the Court were to entertain Marlowe's waived argument, Marlowe's argument fails. The Appeals Council told the ALJ to re-evaluate the opinion evidence according to the regulations but didn't direct the ALJ to make any specific conclusions.[12] As explained below, the ALJ complied with the regulations when he evaluated Dr. Srivastava's opinion.

---

[11]　　Even so, Marlowe's complaint that in 2021 the ALJ evaluated Dr. Srivastava's opinion differently than he did in 2020 ignores the fact that the Appeals Council told the ALJ to re-evaluate Dr. Srivastava's opinion. Tr. 229.

[12]　　The Appeals Council wrote, "Upon remand, the Administrative Law Judge will: …."

　　　　Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the medical source opinion(s) pursuant to the provisions of 20 CFR 404.1520c and 416.920c. As appropriate, the Administrative Law Judge may request the medical source provide additional evidence and/or further clarification of the opinion (20 CFR 404.1520b and 416.920b).

Tr. 229.

19

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 404.1520c, 404.1520c(c)(1)–(5), 416.920c(a), 416.920c(c)(1)–(5).[13] *Supportability* and *consistency* are the most important factors. 20 C.F.R. § 416.920c(a). *Supportability* means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." *Id.* at § 416.920c(c)(1). *Consistency* means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." *Id.* at § 416.920c(c)(2). The Commissioner must explain the *supportability* and *consistency* factors when discussing a medical opinion. *Id.* at § 416.920c(b)(2). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 1:19-cv-2261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

The ALJ evaluated Dr. Srivastava's opinion as follows:

---

[13]    The regulations at 20 C.F.R. §§ 404.1520c and 416.920c are identical. I use them interchangeably throughout this report and recommendation.

The checklist-type form completed by Dr. Sanjay Srivastava is unpersuasive. He opined the claimant can stand/walk for a total of "probably 2 hours" a day, and 1–2 hours without interruption. He further noted that the claimant would be off task 15% of the workday. He noted the claimant can occasionally balance, stoop, crouch, and kneel; but can never climb or crawl. He could not opine[] on the claimant's ability to lift/carry, but was able to opine on the claimant's postural limitations. He noted the claimant would be absent from work more than 4 days per month. (See 9F). Dr. Srivastava does not adequately support his standing/walking limitations. He notes post-bronchodilator findings and emphysema. More recent exams from 2020 note normal pulmonary exams. In January of 2020, pulmonary effort was normal. (23F/3). In February of 2020, pulmonary effort was normal and breath sounds were normal (25F/5). In August of 2020, the claimant reported that he is winded when carrying groceries in the house and he does not feel that he can work. However, he noted that he was still smoking. (24F/151). In September of 2020, breath sounds were clear and equal bilaterally. No wheezes rubs or rhonchi were noted. (21F/6). Additionally, the record does not support such extreme absentee restrictions, nor does Dr. Srivastava provide an explanation for this limitation. While Dr. Srivastava may have a treating relationship with the claimant, he lacks supportability with the record, as well as a lack of support for the extreme limitations in his statement.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by both the objective and subjective medical evidence of record. Based on treatment notes from Dr. Srivastava, Dr. Perala and pulmonary function test from March 2019, the undersigned finds that the treated effects of the claimant's COPD with emphysema, tobacco abuse, and sleep apnea and anxiety-related issues have restricted him to a reduced range of light work with additional postural and environmental temperature and particle restrictions to the extent described in this finding.

Tr. 27.

Earlier in his decision, the ALJ described Dr. Srivastava's treatment notes, Dr. Perala's treatment notes, and Marlowe's pulmonary function tests.

21

*See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming the ALJ's decision when the ALJ stated that the treating physician's opinion was inconsistent with past treatment notes and detailed those treatment notes elsewhere in her decision; "[I]t suffices that [the ALJ] listed them elsewhere in her opinion") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 349, 366 (6th Cir. Nov. 17, 2014)). The ALJ explained that Dr. Srivastava was Marlowe's pulmonologist who Marlowe returned to in January 2019 after not having seen Dr. Srivastava for more than a year. Tr. 20. Marlowe was out of his Symbicort and rescue inhaler and reported that he was experiencing shortness of breath. Tr. 20. He was smoking 10 to 15 cigarettes a day. Tr. 20. Dr. Srivastava noted that Marlowe's pulmonary function test showed a moderate to severe obstruction. Tr. 20. Dr. Srivastava's exam findings showed that Marlowe's lungs were clear to auscultation with no wheezes, rhonchi, or rales and Dr. Srivastava refilled Marlowe's medications. Tr. 20.

The ALJ wrote that Marlowe then had a "State Agency-requested consultative pulmonary function test" in March 2019, after which Marlowe was diagnosed with "moderate obstructive ventilatory defect." Tr. 20. The ALJ commented that although Marlowe's breathing "'progressively weakened during testing,' the examining respiratory therapist observed that [Marlowe] improved following the use of bronchodilators." Tr. 20.

The ALJ discussed that in July 2019, Marlowe's primary care physician, Dr. Perala, observed that Marlowe's shortness of breath was partly related to

COPD but that the "'main cause of [Marlowe's] dyspnea' was anxiety that 'flared with COPD.'" Tr. 20. The ALJ wrote, "[u]pon offering [Marlowe] anxiety-management tools at this appointment, Dr. Perala observed that [Marlowe's] 'dyspnea completely resolved in the office.'" Tr. 20. And the ALJ noted that Marlowe reported that Trazadone helped him sleep, "suggesting that [Marlowe's] sleep apnea did not affect him persistently." Tr. 20. The ALJ's discussion of that evidence supports the ALJ's finding that, because it wasn't supported by or consistent with the record, Dr. Srivastava's opinion is not persuasive.[14] *See* 20 C.F.R. §§ 404.1520c(c); *Crum*, 660 F. App'x at 457.

Marlowe argues that the ALJ "failed to explain the factors he used when evaluating the opinions as required by 20 CFR 404.1520c." Doc. 9, at 20. He complains, "[t]he only factors or reasoning the ALJ cited was alleged normal pulmonary examinations." *Id.*

First, the ALJ is not required to discuss all the factors. 20 C.F.R. 404.1520c(b)(2). The ALJ discussed the most important factors—*supportability* and *consistency*—when he found that Dr. Srivastava's opinion wasn't

---

[14] Marlowe does not allege that the ALJ's failure to use the word *consistent* in his analysis is error. Nor would such a claim be successful, because the ALJ "need not specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (collecting cases). The ALJ's reliance upon Dr. Srivastava's exam findings goes to the *supportability* factor and the ALJ's reliance upon treatment notes from other providers goes to the *consistency* factor. *See* 20 C.F.R. § 405.1520c(c)(1) & (2).

supported by Dr. Srivastava's own treatment notes and was inconsistent with other treatment notes in the record. Tr. 20, 27.

Next, Marlowe's assertion that the ALJ only cited normal exams when finding unpersuasive Dr. Srivastava's opinion is mistaken. The ALJ also stated that Dr. Srivastava didn't provide an adequate explanation for the assessed limitations. Tr. 27. The ALJ commented that Dr. Srivastava completed a "checklist-type form" with minimal supporting explanations for the standing and walking limitations, citing only Marlowe's emphysema and pulmonary function test results. Tr. 27. Elsewhere in the decision, the ALJ commented that a subsequent pulmonary function test showed that Marlowe's results were not as severe—Marlowe had a "moderate obstructive ventilatory defect" that improved with bronchodilators rather than a "moderate to severe obstruction" finding referenced by Dr. Srivastava. Tr. 20. And the ALJ commented that Dr. Srivastava provided no explanation to support the absenteeism limitation. Tr. 27. That makes Dr. Srivastava's opinion "patently deficient."[15] S*ee Dollinger v. Comm'r of Soc. Sec.*, No. 22-3359, 2023 WL 1777386, at *4 (6th Cir. Feb. 6, 2023) (a checkbox form completed by a treating source which only contained a brief explanatory note for the assessed limitations "is the kind of 'vague and

---

[15]     In his reply brief, Marlowe argues that it is unfair to apply the "check-box form" cases to Dr. Srivastava's opinion because the state agency reviewers also "provided [findings] in a similar fashion to the 'checklist-type form' used by Dr. Srivastava." Doc. 11, at 3–4. But the state agency reviewers provided specific, written limitations with explanations, *see, e.g.*, Tr. 141–42, whereas Dr. Srivastava did not.

unhelpful' opinion that is patently deficient and could not have been credited by the Commissioner") (quoting *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009) (doctor's reference to "testing" to support his conclusions on a questionnaire were "vague and unhelpful" and did not provide substantial evidence to support his conclusions)).

Elsewhere in the decision the ALJ cited other factors contained in 20 C.F.R. § 404.1520c(c). The ALJ recognized that Dr. Srivastava was Marlowe's pulmonologist. Tr. 20. *See* 20 C.F.R. 404.1520c(c)(4) (the ALJ considers the medical source's specialization). The ALJ commented that Marlowe returned to Dr. Srivastava for treatment after a one-year gap, he was out of some of his medications, and Dr. Srivastava refilled his medications. Tr. 20. *See* 20 C.F.R. § 404.1520c(c)(3)(ii) & (iii) (the ALJ considers the frequency of the examinations and the treatment received). And the ALJ also remarked that Marlowe continued to smoke cigarettes, Tr. 27, despite Dr. Srivastava's recommendation that he stop smoking, Tr. 20.

Marlowe argues that the ALJ's reliance upon exam findings made by medical providers other than Dr. Srivastava is error. Doc. 9, at 21. He writes, "[t]hese are not telling examinations to reject Dr. Srivastava's opinion." *Id.* at 21, 24–25; Doc. 11, at 5. Marlowe doesn't cite legal authority indicating that when evaluating an opinion an ALJ is only permitted to rely on treatment notes from the doctor who authored the opinion. Agency rules say otherwise. *See* 20 C.F.R. § 404.1520c(c)(2) ("Consistency. The more consistent a medical

opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be"). Marlowe asserts that the ALJ "also does not account that the majority of the records from 2020 were based on telephonic doctor's visits due to COVID-19," Doc. 9, at 21, but doesn't explain how those records render faulty the ALJ's evaluation of Dr. Srivastava's opinion.

Marlowe submits that the ALJ's statement that Marlowe had normal pulmonary examinations, Tr. 27, is wrong. Doc. 9, at 20. Marlowe contends that the ALJ characterized a January 2020 visit as showing that Marlowe's "pulmonary effort was normal" but that at that visit Marlowe also reported congestion and a cough and was found to have a respiratory exam that was "diminished bilaterally." Doc. 9, at 20–21 (citing Tr. 1258). While true that Marlowe complained of a cough and congestion, he also reported sinus pressure and stated that he was using Flonase to treat that problem. Tr. 1258. In any event, the ALJ's statement that Marlowe's "pulmonary effort was normal" is accurate. Tr. 27, 2158. And while the ALJ didn't write that Marlowe's respiratory was "diminished bilaterally," that omission was not error. The ALJ found that Marlowe's COPD with emphysema was a severe impairment, Tr. 18, and concluded that that impairment limited him to a reduced range of light work with postural and environmental limitations, Tr. 27. The ALJ found persuasive the state agency reviewers' opinions which, in turn, limited Marlowe's functional abilities based on his COPD. Tr. 27, 141–42, 196–98. In

other words, the ALJ recognized that Marlowe's COPD and emphysema caused symptoms that limited Marlowe but found that the limitations were not as severe as Dr. Srivastava stated in his opinion.

Marlowe complains that the ALJ didn't cite records that support Dr. Srivastava's opinion and lists the records Marlowe believes supports Dr. Srivastava's opinion. Doc. 9, at 21–22; Doc. 11, at 5–6. But an ALJ is not required to cite every piece of evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). In any event, Marlowe's reliance upon an August 2016 treatment note indicating that Marlowe had emphysema and a pulmonary function test that showed no obstruction and decreased diffusion capacity, Doc. 9, at 21 (citing Tr. 559), and a November 2017 pulmonary function test showing severe obstruction, Doc. 9, at 21 (citing Tr. 611, 614), is unavailing because that evidence is from the time period covered by the Agency's decision denying Marlowe's prior disability application. *See* Tr. 94–95. And while Marlowe had a function test in January 2019 that showed a moderately severe obstruction, severe diffusion defect, and moderate neuromuscular disease, Doc. 9, at 21–22 (citing Tr. 895, 898), the ALJ cited Dr. Srivastava's characterization of that finding as moderate to severe. Tr. 20, 902; *see also* Tr. 890. And the ALJ cited Marlowe's March 2019 pulmonary function test showing moderate obstruction. Doc. 9, at 22 (citing Tr. 965); Tr. 20. So the ALJ discussed the relevant pulmonary function tests.

Marlowe complains that the ALJ didn't cite comments from Marlowe's mental health providers observing Marlowe with shortness of breath while talking during counseling sessions. Doc. 9, at 22. Again, the ALJ is not required to cite every piece of evidence. *See Kornecky*, 167 F. App'x at 508. The ALJ recognized that Marlowe had shortness of breath. Tr. 20, 21. And Marlowe doesn't challenge the ALJ's finding that Dr. Perala opined that Marlowe's shortness of breath was mainly caused by Marlowe's anxiety and that "[u]pon offering [Marlowe] anxiety-management tools at [an] appointment, Dr. Perala observed that Marlowe's "dyspnea completely resolved in the office." Tr. 20, 1067. Based in part on Marlowe's anxiety and memory deficits, the ALJ limited Marlowe to performing "routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions with coworkers, supervisors and public (no arbitration, negotiation or confrontation)." Tr. 23, 27. Marlowe doesn't challenge that finding.

Marlowe concludes that his treatment, objective testing, and "weight of the evidence" supports Dr. Srivastava's opinion. Doc. 9, at 22. But the ALJ disagreed, and his decision did not run afoul of the regulations. Despite Marlowe's allegations to the contrary, *Id*. at 24–25, the ALJ's decision is supported by substantial evidence and the ALJ's explanation is sufficient for judicial review. Marlowe's challenge amounts to a request that the Court reweigh the evidence, which the Court cannot do. *See Garner*, 745 F.2d at 387.

Finally, at the end of his brief, Marlowe asserts that at the administrative hearings the vocational experts gave conflicting testimony about Marlowe's past work. Doc. 9, at 24. But Marlowe doesn't identify an error that the vocational expert made at the June 2021 hearing or that the ALJ made when relying on the vocational expert's testimony. *Id*. So any challenge Marlowe makes on that score fails.

**Conclusion**

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: February 21, 2023

/s/ *James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).